220 F.3d 1365 (Fed. Cir. 2000)
 W. FRANK BOLING, W.E. GORE, JR., GEORGE RAYFORD VEREEN, HOPE WILLARD, in their behalf and on behalf of all other persons similarly situated; WILLIAM D. BOLING, individually, WILLIAM D. BOLING, as Trustee of the Agnes T. Boling Living Trust, and W. FRANK BOLING; LOY REE B. BALLAM; CLIFTON BELLAMY; BEACHWOOD GOLF CORPORATION; ROBERT T. DARDEN, SR., MILDRED C. DARDEN, DANNY ROSS MOORE, SR., MARTHA R. MOORE; FRANK B. CLARE, individually, FRANK B. CLARE, as personal representative of the Estate
of Shelley S. Edmondson, FRANK B. CLARE as personal representative of the Estate of Louise Edmondson, and FRANK B. CLARE as personal representative of the Estate of Shirley E. Clare, SAMUEL L. OWENBY, DONNA K. OWENBY; ELBERT POWELL, DALE POWELL; NATHALIE FLOWERS EDGE, HILBURN EDGE; JOHN E. BATTEN, III, DONNA A. BATTEN; H.F. BELL, JOSEPH E. BELL, L.J. BELL, RALPH C. BELL, RETHA C. BELL, CLARICE B. RITTER, DORIS B. GUMP, ESTHER B. BOYD, LOY REE B. BALLAM; L.J. BELL, J.B. JOHNSON, as personal representatives of the Estate of C.H. Permenter, Jr. and Louise L. Permenter; HERBERT CECIL WARD, WILLIAM M. WARD, LINDA W. FUNDERBURK; GEORGE R. VEREEN; HOPE WILLARD, GERALD DENNIS NEELEY and JAMES FAIRCLOTH, Plaintiffs-Appellants,
v.
UNITED STATES, Defendant-Appellee.
 99-5025
 United States Court of Appeals for the Federal Circuit
 DECIDED: August 10, 2000
 
 Appealed from: United States Court of Federal Claims Judge John P. WieseThornwell F. Sowell, Sowell Todd Laffitte Beard & Watson, L.L.C., of Columbia, South Carolina, argued for palintiffs-appellants. With him on the brief was Carey T. Kilton. Of counsel on the brief were H.F. Bell, of Chesterfield, South Carolina, and Newman Jackson Smith, Nelson Mullins Riley & Scarborough, L.L.P., of Charleston, South Carolina.
 Steve D. Gold, Attorney, Appellate Section, Environment and Natural Resources Division, Department of Justice, of Washington, DC, argued for the defendant-appellee. With him on the brief were Lois J. Schiffer, Assistant Attorney General, John T. Stahr, Attorney, Appellate Section, and Alan Brenner, Attorney, General Litigation Section. Of counself on the brief were Franklin Jordan and John Kassebaum, District Counsel, U.S. Army Corps of Engineers, of Charleston, South Carolina.
 Before LOURIE, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.
 GAJARSA, Circuit Judge.
 
 DECISION
 
 1
 The plaintiffs appeal the decision of the United States Court of Federal Claims in which fifteen of the plaintiffs' cases were dismissed as time-barred. Because the Court of Federal Claims erred by applying the incorrect legal standard for determining when the claims accrued, we vacate and remand.
 
 BACKGROUND
 
 2
 The Atlantic Intracoastal Waterway runs along the eastern seaboard, and generally follows natural waters occurring inside barrier islands. In some areas, however, artificial cuts to land were required to make the waterway a continuous navigable channel. One section that required the digging of a canal was in Horry County, South Carolina. To this end, in the early 1930's, South Carolina obtained right-of-way easements from the owners of property adjacent to the proposed canal site. These easements, ranging in overall width from about 320 to 380 feet, were then assigned to the United States. Construction of the canal by the Army Corps of Engineers ("Corps") began in 1933 and was finally completed in 1940. The original canal width was significantly less than the width of the easements owned by the United States.
 
 
 3
 Erosion of the waterway banks began occurring almost immediately after the construction of the waterway was completed. By 1976, the Corps concluded that erosion had removed most of the monuments that marked the limits of the easement. In 1982, Loy Ree Ballam, an owner of property adjacent to the canal (and a plaintiff in the current suit) filed suit in federal district court alleging that her land had been taken within the meaning of the Fifth Amendment due to erosion caused by the waterway. See Ballam v. United States, 552 F. Supp. 390 (D.S.C. 1982). After Ballam prevailed at trial, the United States took an appeal to the Federal Circuit,[1] where this court reversed, stating that the plaintiff had "no property right to be safeguarded by the [Corps] against collateral consequences of navigation improvements." Ballam v. United States, 806 F.2d 1017, 1022 (Fed. Cir. 1986). In other words, this court held that erosion was not a taking within the Fifth Amendment.
 
 
 4
 Two years later, the Federal Circuit revisited the legal pronouncement made in Ballam. In Owen v. United States, 851 F.2d 1404 (Fed. Cir. 1988), an en banc court overruled Ballam for its failure to recognize that "government-caused erosion" results in a taking under the Fifth Amendment. According to the court, "once the erosion resulting directly from the government's construction of the artificial waterway reached the land outside the easement right-of-way . . . the cost of revetments necessary to protect land outside the easement [should have been] borne by the government." Id. at 1415.
 
 
 5
 In the present suit, numerous owners of land adjacent to the waterway have brought suit in the Court of Federal Claims for a taking caused by erosion from the waterway. Plaintiffs alleged that "waves created by boat traffic, the ebb and flow of the tide and other natural actions of water in man-made canals, in addition to improper maintenance of the waterway, have caused and continue to cause erosion" to their land. Thus, the plaintiffs sought compensation for the land actually taken and the cost of revetments necessary to protect their land from future damage. The government responded by claiming that all suits should be dismissed for lack of subject matter jurisdiction because the plaintiffs were actually alleging a tort and not a taking. Alternatively, the government alleged nineteen of the suits should be dismissed as time-barred, including Loy Ree Ballam's suit, which should also be barred by res judicata. Finally, the government moved for summary judgment of the plaintiffs' claim for the costs of revetments, asserting that the plaintiffs have no property right to bank protection at the expense of the government.
 
 
 6
 The Court of Federal Claims rejected the government's contention that this was not a taking. The court held that a taking is determined not by the care with which a governmental action is taken, but by the extent of the injury occasioned by that action. Thus, "the nature of the alleged invasion by the government is such that, if established, would clearly constitute a taking." Boling v. United States, 41 Fed. Cl. 674, 681 (1998). As for the government's contention that some of the suits were time-barred, the court held that a takings claim accrued once any portion of the parcel at issue had suffered erosion damage. See id. Thus, any claim relating to a parcel that was first eroded more than six years before the filing date of the lawsuit[2] would be dismissed as time-barred, even though that property may have experienced some additional damage within the six years prior to filing.
 
 
 7
 The Court of Federal Claims held a trial to determine the factual issue of when each parcel first experienced erosion damage. The primary witness at trial, Dr. Timothy Kana, was charged with the task of determining when and if the erosion had crossed the easement line of the properties at issue. Dr. Kana divided the parcels into three categories: category 1 encompassed those properties that were encroached prior to 1988,[3] category 2 encompassed those properties that were encroached between 1988 and 1994, and category 3 encompassed those properties that were encroached, if at all, after 1994. Only those claims based on properties in category 2 were deemed viable claims. Those in category 1 were dismissed as barred by the six-year statute of limitations of the Tucker Act; those in category 3 were dismissed as not ripe for adjudication. As a result of this trial, fifteen cases were dismissed with prejudice as time-barred under the Tucker Act.[4] Ten other cases were dismissed without prejudice because the landowners had not yet suffered erosion damage. Four cases were timely filed and remained viable. The Court of Federal Claims rejected arguments by the plaintiffs for equitable tolling of the statute of limitations, which would have resurrected some of the claims dismissed as time-barred. Additionally, the court rejected the plaintiffs' assertion that the erosion damage to their property amounted to a continuing claim, which would have allowed all landowners to recover for erosion damage sustained in the six years prior to the filing of the lawsuit. Finally, the court ruled that the plaintiffs with viable claims did not have a separate property right for the costs of bank protection.
 
 
 8
 This appeal deals only with those cases dismissed with prejudice as time-barred under the Tucker Act's statute of limitations.
 
 DISCUSSION
 A. Accrual
 
 9
 The Fifth Amendment of the United States Constitution ensures that the federal government does not appropriate private property for public use without just compensation. See U.S. Const. amend. V. A wide spectrum of governmental action has been found to constitute a taking of property within the meaning of the Fifth Amendment, ranging from the actual physical occupation of land to, in certain circumstances, the enactment of a regulation or statute. See generally Loveladies Harbor, Inc. v. United States, 28 F.3d 1171, 1175-76 (Fed. Cir. 1994) (discussing the historical development of the law of takings). This case deals with a taking occasioned by a gradual physical process--erosion--that is traceable to an artificial waterway constructed by the government on a right-of-way easement. The Supreme Court, as well as this court, has recognized that such government-caused loss of private property can constitute a compensable taking. See United States v. Dickinson, 331 U.S. 745, 747 (1947);Owen, 851 F.2d at 1415.
 
 
 10
 When property is taken and the government fails to compensate the owner, the Tucker Act, 28 U.S.C. § 1491 (1994), provides jurisdiction to enforce the owner's compensatory right. See Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 11-12 (1990). Claims for compensation under the Tucker Act must be filed in the Court of Federal Claims within six years of accrual. See 28 U.S.C § 2501 (1994). In general, a takings claim accrues when "all events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988). Thus, the key date for accrual purposes is the date on which the plaintiff's land has been clearly and permanently taken. See Seldovia Native Assoc., Inc. v. United States, 144 F.3d 769, 774 (Fed. Cir. 1998). However, in cases where the government leaves the taking of property to a gradual physical process, rather than utilizing the traditional condemnation procedure, determining the exact moment of claim accrual is difficult.
 
 
 11
 The Supreme Court grappled with this problem in Dickinson, a case involving intermittent flooding caused by a government-constructed dam. Mindful of the difficulties faced by property owners in such situations, the Court discouraged the strict application of accrual principles in cases where the taking is the result of a gradual process. See Dickinson, 331 U.S. at 748 ("The Fifth Amendment expresses a principle of fairness and not a technical rule of procedure enshrining old or new niceties regarding 'causes of action'--when they are born, whether they proliferate, and when they die."). Thus, the Court rejected the government's contention that the takings claim accrued immediately upon the first inundation of the property, because at that time, the frequency and permanency of the flooding was uncertain. Rather than requiring the plaintiff to sue in the face of such uncertainty, the Court held that accrual of the claim was delayed until the situation had "stabilized" such that the "consequences of the inundation have so manifested themselves that a final account may be struck." Id. at 749.
 
 
 12
 Ten years later, the Court clarified the "stabilization" concept as expressed in Dickinson, noting: "The expressly limited holding in Dickinson was that the statute of limitations did not bar an action under the Tucker Act for a taking by flooding when it was uncertain at what stage in the flooding operation the land had become appropriated for public use." United States v. Dow, 357 U.S. 17, 27 (1958). In other words, stabilization occurs when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined. Thus, during the time when it is uncertain whether the gradual process will result in a permanent taking, the plaintiff need not sue, but once it is clear that the process has resulted in a permanent taking and the extent of the damage is reasonably foreseeable, the claim accrues and the statute of limitations begins to run. Subsequent cases from this court, and its predecessor, have reiterated this understanding of Dickinson. See Fallini v. United States, 56 F.3d 1378, 1382 (Fed. Cir. 1995) (holding that a claim stabilizes when the "permanent nature" of the taking is evident); Nadler Foundry & Mach. Co. v. United States, 164 F. Supp. 249, 251 (Ct. Cl. 1958) (holding that Dickinson does not entitle the plaintiff to wait until the damage is complete before filing suit). Thus, while Dickinson and its progeny recognize that takings by gradual processes present special difficulties, these cases represent an application of general accrual principles, rather than a broad exception to them. See Gustine Land & Cattle Co. v. United States, 174 Ct. Cl. 556, 656 (1966) (recognizing that a broad interpretation of Dickinson would put it in "unending conflict with the statute of limitations").
 
 
 13
 In this case, the Court of Federal Claims held that the plaintiffs' takings claims accrued once any small portion of the property had suffered erosion damage. See Boling, 41 Fed. Cl. at 691-92. According to the court, this is the proper time for stabilization, because this is when the government invaded the plaintiffs' land and effected a permanent taking. See id. The plaintiffs, on the other hand, argue that their takings claims should not have been dismissed as time-barred because the gradual process that continues to damage their property had not "stabilized" within the meaning of Dickinson at the time the erosion first crossed the easement line. The plaintiffs point out that the slow and irregular nature of erosion and the difficulty in determining the exact location of the government's easement led to great uncertainty in determining when the erosion first affected their property. Additionally, the plaintiffs note the uncertainty in determining how far the erosion will extend and when it will be complete. Relying heavily on Dickinson, the plaintiffs contend that this uncertainty precludes a determination that the claims had stabilized, and that the delay in filing the instant lawsuits was justified. The plaintiffs go so far as to argue that the filing of these suits could have been postponed until the waterway had completely eroded the parcels at issue.
 
 
 14
 The contention that Dickinson stands for the proposition that the filing of a lawsuit can be postponed until the full extent of the damage is known has been soundly rejected. See Fallini, 56 F.3d at 1582 ("[I]t is not necessary that damages from the alleged taking be complete and fully calculable before the cause of action accrues.");Columbia Basin Orchard v. United States, 88 F. Supp. 738, 739 (Ct. Cl. 1950) ("[W]e do not think the Supreme Court, in the Dickinson case, meant to hold that plaintiff was entitled to wait until any possibility of further damage has been removed."); see also Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (holding that the proper focus in a claim accrual analysis "is upon the time of the [defendant's] acts, not upon the time at which the consequences of the acts become most painful."). Properly understood, stabilization as discussed in Dickinson is not deferred until the progressive environmental damage stops, but occurs when the environmental forces have substantially and permanently invaded the private property such that the permanent nature of the taking is evident and the extent of the damage is reasonably foreseeable. Thus, the plaintiffs' contention that they were entitled to delay the filing of the these lawsuits until the erosion damage ceased is incorrect.
 
 
 15
 The plaintiffs' reliance on Applegate v. United States, 25 F.3d 1579 (Fed. Cir. 1994), in support of the opposite result is misplaced. In Applegate, a dredging operation caused erosion of the south shoreline of the Canaveral Harbor in Florida. In 1968, a plan to build a sand transfer plant was approved. Promises to build the plant, which would have both stopped the continuing erosion and restored the land previously eroded, were renewed as late as 1988. See id. at 1582. However, the plant was never built and in 1992, the landowners sued, alleging a taking by erosion. This court, applying Dickinson, found that the claim was not time-barred. According to the court, because of the slow and gradual nature of the erosion and "because of the Government's promises to build a sand transfer plant, the landowners remained justifiably uncertain about the permanency of the . . . taking." Applegate, 25 F.3d at 1583. Consistent with other post-Dickinson cases, the court emphasized that it is the uncertainty surrounding the permanent nature of the taking, and not the uncertainty surrounding the ultimate extent of the erosion damage, that is critical in determining whether the situation has stabilized.
 
 
 16
 In an attempt to fit themselves within the rule expressed in Applegate, the plaintiffs point out that the Corps had a fluctuating policy regarding the erosion along the waterway during the relevant time period. It is true that between 1979 and 1988, the Corps studied the erosion along the waterway and even authorized the construction of revetments. It is also true that these plans to build revetments, which would have protected the plaintiffs' property, were later rescinded. However, unlike the situation in Applegate, the plaintiffs in this case were not aware of these plans until after they filed this lawsuit. In fact, the Corps denied the only request that was made for erosion protection. Thus, the critical element that delayed stabilization in Applegate--the justifiable uncertainty about the permanency of the taking--is simply not present in this case.
 
 
 17
 However, the holding of the Court of Federal Claims that the claim stabilizes once any small portion of land has been taken is also inconsistent with Dickinson. See Boling, 41 Fed. Cl. at 691-92 (holding that the claim accrues even when only "mere inches" of the property have been affected). In Dickinson, the Supreme Court made clear that accrual principles should not be rigidly applied in cases involving environmental takings. See Dickinson, 331 U.S. at 748. This is because the Court recognized the difficulties facing property owners when the government leaves "the taking to physical events, thereby putting on the owner the onus of determining the decisive moment in the process . . . when the fact of taking could no longer be in controversy." Id. Following this mandate, we hold that requiring the plaintiffs to sue immediately upon the initial encroachment of their land is too rigid an application of the stabilization principle. As discussed above, the touchstone for any stabilization analysis is determining when the environmental damage has made such substantial inroads into the property that the permanent nature of the taking is evident and the extent of the damage is foreseeable. Given the realities of the terrain and the difficulty of determining the exact boundary of the easement, it was virtually impossible for the landowner to discern that land had been taken when the degree of encroachment was only "mere inches." See also Hopland Band, 855 F.2d at 1577 (noting that a claim does not accrue unless the "plaintiff was or should have been aware of" the facts that fix the government's liability) (emphasis added). At the time only a small portion of the land had suffered erosion damage, the permanent nature of the taking was not yet evident, thereby precluding a finding of claim stabilization. However, as the erosion damage progressed and made a substantial encroachment of the parcel, the uncertainties must give way to the unmistakable fact that land had been eroded. Once the parcel had been substantially encroached by erosion, the permanent nature of the taking was evident and the claim stabilized within the meaning of Dickinson. Thus, we hold that the takings claims accrued when the erosion had substantially encroached the parcels at issue and the damages were reasonably foreseeable.[5]
 
 
 18
 The point at which the erosion damage transitions from "mere inches" to substantial encroachment is not amenable to precise definition, and will vary from parcel to parcel. See Cooper v. United States, 827 F.2d 762, 764 (Fed. Cir. 1987) ("The point at which the taking becomes sufficiently certain to give rise to a claim for compensation varies in each case."). However, as guidance in making this determination the fact-finder should take into account the uncertainties of the terrain, the difficulty in determining the location of the government's easement, and the irregular progress of erosion. Having taken these factors into account, the key issue is whether the permanent nature of the taking was evident such that the land owner should have known that the land had suffered erosion damage. Additionally, we recognize that Dr. Kana testified that many of the properties at issue exhibited significant erosion damage well before the filing date. This testimony, credited by the trial court in support of its finding that the claims accrued more than six years prior to the filing of the lawsuit, may also support the conclusion that the claims are time-barred under the correct accrual standard. For example, Dr. Kana testified that some parcels were initially encroached in the 1950's. In such cases, it may be little more than a pro forma exercise to determine that such a parcel was substantially encroached long before the filing date, as well. However, we must remand this case to the Court of Federal Claims to make these factual determinations in the first instance.
 
 B. Continuing Claim
 
 19
 In addition to arguing that the accrual of their claims should be delayed, the plaintiffs assert that the time-bar should be limited to exclude only damage that occurred greater than six years prior to the filing of the claim. According to the plaintiffs, a taking by a gradual process is a continuing claim, so that as each additional quantum of land is taken, a new cause of action arises. To hold otherwise, plaintiffs argue, would essentially give the government the right to erode the plaintiffs' remaining property with impunity. Even the Court of Federal Claims, which rejected the plaintiffs' argument, noted the conceptual difficulty of a rule that would hold the plaintiffs' time-barred from suing for land that has yet to be taken. See Boling, 41 Fed. Cl. at 692. Nevertheless, we agree with the Court of Federal Claims and decline the plaintiffs' invitation to extend the continuing claims doctrine into environmental takings.
 
 
 20
 The continuing claims doctrine has been applied when the government owes a continuing duty to the plaintiffs. In such cases, each time the government breaches that duty, a new cause of action arises. See Hatter v. United States, 203 F.3d 795, 797-98 (Fed. Cir. 2000) (en banc). The continuing claims doctrine, however, does not apply in cases where a single governmental action causes a series of deleterious effects, even though those effects may extend long after the initial governmental breach. For example, in Fallini, the landowners claimed a governmental taking based on a statute that required them to allow wild horses to drink water that was kept on their property. Invoking the continuing claims doctrine, the landowners argued that each drink taken by a horse on their property amounted to a new taking. See Fallini, 56 F.3d at 1383. The court rejected that argument, holding that the takings claim accrued when the relevant statute was enacted, because this was the sole governmental action that arguably breached a duty owed to the plaintiffs. See id.; see also Ariande Fin. Servs. v. United States, 133 F.3d 874 (Fed. Cir. 1998) (holding that the continuing claims doctrine did not apply in a case involving the breach of a twenty-year contract); Applegate, 25 F.3d at 1583 (stating that a taking by a gradual physical process does not invoke the continuing claim doctrine).
 
 
 21
 Similarly, this case does not fall within the continuing claims doctrine because each additional quantum of erosion damage is not a new breach by the government. While erosion is certainly a process that gradually increases the property damage over time, there is only a single governmental act that breaches a duty to the plaintiffs--allowing the erosion from the waterway to substantially encroach the plaintiffs' property. Once this has occurred, the permanence of the taking is manifest, its progressive nature is apparent, and its ultimate extent is reasonably foreseeable. In short, the increased damages that occur as more of the land is eroded are not the result of new and independent breaches by the government, but are merely the natural and foreseeable consequences of the government's single breach. The continuing claims doctrine is inapplicable in such a situation.
 
 C. Equitable Tolling
 
 22
 Finally, the plaintiffs allege that the commencement of the statute of limitations should have been equitably tolled. As a basis for equitable tolling, plaintiffs point to the fluctuations of the Corps' policy regarding erosion along the waterway and the fluctuating status of the legal claim that they were attempting to assert. As discussed above, the plaintiffs were unaware of the Corps' policy toward the erosion damage along the waterway until the filing of this lawsuit. The government did not promise corrective action regarding the damages sustained nor mislead the plaintiffs into believing that such corrective action would be forthcoming. Therefore, any alleged fluctuations in the Corps' policy do not justify equitable tolling of the limitations period. See Applegate, 25 F.3d at 1583.
 
 
 23
 The plaintiffs also assert that this court's Ballam decision, which effectively barred the cause of action they intended to assert, and its subsequent reversal in Owen, form another basis for equitable tolling. According to the plaintiffs, after the Ballam decision was rendered, any attempt to assert their rights to compensation under the Fifth Amendment would have been futile, because the identical claim had been previously rejected. However, the plaintiffs point to no authority which would suggest that the presence of adverse precedent automatically leads to equitable tolling. The only case cited by the plaintiffs in support of their position is Seattle Audubon Soc'y v. Robertson, 931 F.2d 590 (9th Cir. 1991), rev'd on other grounds, 503 U.S. 429 (1992). In Seattle Audubon Society, the Ninth Circuit ruled that it was appropriate to toll the fifteen-day statute of limitations applicable to a claim that would have been futile under a statute that was subsequently held unconstitutional. However, this case was expressly limited to its peculiar circumstances, in particular the unusually short limitations period, and the diligence of the plaintiff in pursuing its case. See id. at 597. It does not support the broad proposition asserted by the plaintiffs. It is true that during the period between the decision in Ballam and its subsequent reversal in Owen, any claim by the plaintiffs for compensation would have been difficult. However, this difficulty does not justify tolling the statute of limitations.
 
 CONCLUSION
 
 24
 The Court of Federal Claims correctly rejected the arguments by the plaintiffs that the continuing claims doctrine applied to this case, and that the statute of limitations should be equitably tolled. However, because the court, in dismissing the plaintiffs' claims as time-barred, applied an incorrect standard for claim accrual, we vacate and remand for the court to apply the correct accrual standard as set forth in this opinion.
 
 COSTS
 
 25
 Each party shall bear its own costs.
 
 
 26
 VACATED AND REMANDED.
 
 
 
 NOTES:
 
 
 [1]
 The appeal was initially taken to the Court of Appeals for the Fourth Circuit, where the district court was reversed. See Ballam v. United States, 747 F.2d 915 (4th Cir. 1984). The Supreme Court vacated that judgment and remanded with directions to transfer to this court, which had been given exclusive appellate jurisdiction over such cases. SeeBallam v. United States, 474 U.S. 1078 (1986).
 
 
 [2]
 The filing dates for the lawsuit were February 4, 1993 for plaintiffs Boling, Gore, Vereen, and Willard, and November 30, 1993 for all other plaintiffs.
 
 
 [3]
 Dr. Kana erroneously used 1994 as the filing date of the lawsuit, resulting in a 1988 cut-off date for category 1 property. The Court of Federal Claims found this error to be harmless, a finding not challenged in this appeal. See Boling, 41 Fed. Cl. at 681 n.4.
 
 
 [4]
 Ballam's case was among those time-barred. Therefore, the court did not rule on whether her case could also be barred by res judicata. See Boling, 41 Fed. Cl. at 695.
 
 
 [5]
 Substantial encroachment of the parcel also puts a duty on the landowner to take reasonable steps to protect the property from further erosion damage, such as by the construction of revetments. If the cost of these protections would have been less than the value of the property lost to such preventable erosion, then the government's damages, if any, are limited to the cost of protection. See Dickinson, 331 U.S. at 751 ("If the resulting erosion . . . was in fact preventable by prudent measures, the cost of that protection is a proper basis for determining the damage."); Boling, 41 Fed. Cl. at 694-95.