Clayta **FORSGREN**, et al., Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 04–1223L.

United States Court of Federal Claims.

March 21, 2005.

Karen Budd–Falen, Cheyenne, WY, counsel of record for Plaintiffs.

G. Evan Pritchard, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, counsel of record for Defendant, with whom was Thomas L. Sansonetti, Assistant Attorney General; of counsel were Steven M. Hoffman, United States Department of Interior, Office of the Solicitor, and Diane M. Connolly, United States Department of Agriculture, Office of the General Counsel.

## OPINION

DAMICH, Chief Judge.

Trustees of the Richard A. Forsgren Revocable Living Family Preservation Trust (hereinafter "Plaintiffs")[1] filed this claim un-

---

1. The title plaintiff is Clayta Forsgren, widow of the deceased, who lived on the property at issue

der the Tucker Act, 28 U.S.C. § 1491, and the Fifth Amendment to the United States Constitution on July 27, 2004. Compl. ¶¶ 7–8, at 3. The Complaint alleges that the United States (hereinafter "Defendant"), through its agencies the United States Forest Service and the United States Bureau of Land Management (hereinafter "BLM"), effected a temporary taking of property belonging to the trust through a water flowage easement. Compl. ¶ 1, at 1.

On October 25, 2004, Defendant filed the current motion, its Motion to Dismiss the Complaint for Lack of Jurisdiction (hereinafter "Def.'s Mot."), seeking dismissal for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3) of the Rules of the United States Court of Federal Claims (hereinafter "RCFC").

For the reasons discussed below, Defendant's Motion to Dismiss the Complaint is hereby GRANTED in part and DENIED in part.

## I. Background

In the early 1990s, Defendant began making plans to reconstruct ponds on BLM land near the Forsgren property through an effort known as the CCC Ponds Project, named after the original constructor of the ponds, the Civilian Conservation Corps. Compl. ¶ 1, at 1, ¶ 14, at 4. Plaintiffs' property is located at 99 Riverside Drive, Pinedale, Wyoming, approximately 1,000 feet from the CCC Ponds Project. Compl. ¶ 10, at 3. Plaintiffs allege that their property started experiencing "significant flooding" in the winter of 1995, shortly after the ponds were activated, and that prior to this date, the Forsgren property had never experienced flooding problems. Compl. ¶ 1, at 1, ¶ 24, at 6.

In 1993, two years before the ponds were activated, Richard Forsgren raised concerns about the possibility of water damage to the properties adjacent to BLM land once the ponds were refilled. As a result, Defendant

placed monitoring wells on Mr. Forsgren's land. Compl. ¶ 26, at 6. Defendant finished recharging the ponds in the spring of 1995. Compl. ¶ 33, at 8. Later in 1995, when the Forsgrens began experiencing flooding problems, Mr. Forsgren reported the problems to the CCC Ponds Project committee, which increased monitoring of Mr. Forsgren's land and sent a geologist to inspect the site. Compl. ¶ 34, at 8. The first attempt to combat the flooding problem was the installation of a surface ditch on the Forsgren property in the fall of 1996. However, the ditch failed when ice accumulation blocked the flow of water off the property. Compl. ¶¶ 42–43, at 10. The flooding problems continued until 1999, when Defendant installed a subsurface drain on BLM land adjacent to the Forsgren property.[2] Compl. ¶ 58, at 13, ¶ 62, at 14.

Plaintiffs request a declaratory judgment that Defendant temporarily took Plaintiffs' property during the flooding period, damages for the rental value of the land when it was flooded, compensation for remedial measures taken to combat the flooding, compensation for damages to their home and yard, and an injunction to prevent the United States from flooding Plaintiffs' land in the future. Compl. at 19.

## II. Analysis

Defendant alleges that the jurisdictional requirements of the Court of Federal Claims have not been met because Plaintiffs' claims do not fit within the statute of limitations. The focus of the Court's decision is the appropriate accrual date for Plaintiffs' claim.

### A. Motion to Dismiss Standard

The Court must determine whether subject matter jurisdiction exists as a matter of law. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed.Cir.2002). Since this is a motion to dismiss, the Court must accept the well-pleaded allegations in the complaint as true. *See Miree v. DeKalb County*, 433 U.S.

during the time of the relevant events.

**2.** Plaintiffs state in their complaint that the subsurface drain was installed in 2000. Compl. ¶ 4, at 2. This appears to be a clerical mistake, however, as the rest of the complaint indicates that

the drain was installed in 1999. Regardless, this discrepancy in the date of installation of the subsurface drain is irrelevant to the jurisdictional issue at hand.

25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). However, it is Plaintiffs' burden to show, by a preponderance of the evidence, that jurisdiction exists. *See Taylor v. United States*, 303 F.3d 1357, 1359 (Fed.Cir.2002); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998).

### B. Statute of Limitations

Pursuant to 28 U.S.C. § 2501, a claim brought in the Court of Federal Claims under the Tucker Act must be filed within six years of its accrual date. *See Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed.Cir.1988). This six-year limitation is a jurisdictional requirement in actions brought against the United States. It was "attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." *Id.* Hence, Plaintiffs' claim must have been filed within six years of the date on which it accrued. Because the complaint was filed on July 27, 2004, Plaintiffs can only survive Defendant's motion to dismiss if they can show that their claim accrued on or after July 27, 1998.

### C. Accrual Date

■ A takings claim only accrues when "all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland*, 855 F.2d at 1577 (emphasis in original). As stated in *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed.Cir. 1995), "The question whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." In cases such as this, however, where the gradual taking of property is involved, the Supreme Court has discouraged courts from applying the principles of accrual too strictly. *See United States v. Dickinson*, 331 U.S. 745, 749, 67 S.Ct. 1382, 91 L.Ed.

1789 (1947). The Court in *Dickinson* held that a gradual taking claim accrues when "the situation becomes stabilized," *id.*, which the Federal Circuit has defined as "when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined." *Boling v. United States*, 220 F.3d 1365, 1370–71 (Fed.Cir.2000).

■ In espousing this rule of stabilization, the Supreme Court in *Dickinson* was also careful to note that "[t]he Fifth Amendment expresses a principle of fairness and not a technical rule of procedure enshrining old or new niceties regarding 'causes of action.'" 331 U.S. at 749, 67 S.Ct. 1382. Along this same vein, the Court went on to state that a claim does not accrue until "the consequences of inundation have so manifested themselves that a final account may be struck." *Id.* The test therefore is one of foreseeability—the cause of action accrues when "the permanent character of intermittent flooding c[an] fairly be perceived." *Barnes v. United States*, 210 Ct.Cl. 467, 538 F.2d 865, 873 (1976).[3] Put another way, "once it is clear that the process has resulted in a ... taking and the extent of the damage is reasonably foreseeable, the claim accrues and the statute of limitations begins to run." *Boling*, 220 F.3d at 1371.

#### 1. Foreseeability of the Extent of the Damage

■ Defendant argues that the accrual date should be set as early as 1995, when Plaintiffs first reported flooding problems to the CCC Ponds Project committee. Def.'s Mot. at 10. If this date were used, the statute of limitations would have run in 2001, and Plaintiffs' claim would clearly be time-barred. Alternately, Defendant argues that the claim accrued, at the latest, by 1997, after Plaintiffs had experienced three winter seasons of excessive standing water, which at times accumulated and froze, forming up to six inches of ice on their lawn. Def.'s Mot. at 11 n. 6.

---

**3.** The United States Court of Claims is the predecessor to the United States Court of Appeals for the Federal Circuit. *See Doe v. United States*,

372 F.3d 1347, 1350 (Fed.Cir.2004). Therefore, the decisions of the Court of Claims are binding on this court.

The Court disagrees with Defendant's assessment of the proper accrual date of Plaintiffs' claim. Although three years of seasonal flooding should have allowed Plaintiffs to foresee damage to their land, simply foreseeing the damage is not the test for accrual. Instead, accrual occurs when Plaintiffs should have reasonably foreseen the *extent* of the damage to their property, *Boling,* 220 F.3d at 1371, and when a "final account may be struck." *Dickinson,* 331 U.S. at 749, 67 S.Ct. 1382. To that end, Plaintiffs argue that their claim properly falls within the statute of limitations, since they did not recognize the majority of the damage until 1999, when Defendant installed the subsurface drain on BLM land. Plaintiffs' Response to Motion to Dismiss the Complaint for Lack of Jurisdiction and Memorandum in Support Thereof (hereinafter "Pls.' Resp.") at 19–20. Plaintiffs thus claim that the situation was not stabilized until 1999, when the drain allowed the water to recede and the extent of the damage could be ascertained. Pls.' Resp. at 4.

When the facts are viewed most favorably to Plaintiffs, as they must be with any motion to dismiss, it is clear that the statute of limitations should not have begun to run against Plaintiffs until 1999. For example, Mrs. Forsgren claims that it was not until early 1999 that she began to notice huge cracks in her ceilings, cabinet doors that would no longer hang properly, and sticking windows and doors. Compl. ¶ 54, at 13. The Forsgrens also claim that it was not until later in that same year that a local builder examined the house and found that the kitchen foundation had been partially destroyed by water and ice, that the girder supports in the living room had heaved or buckled, and that the ground beneath the living room was so wet that it had caused the foundation to sink. *Id.* ¶ 57, at 13. As the Supreme Court said in *Dickinson,* "when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken.'" 331 U.S. at 749, 67 S.Ct. 1382. The reasoning behind this rule is as follows:

> Assuming that … an action would be sustained [as soon as inundation is threatened], it is not a good enough reason why [a plaintiff] must sue then or have, from that moment, the statute of limitations run against him. If suit must be brought, lest he jeopardize his rights, as soon as his land is invaded, other contingencies would be running against him-for instance, the uncertainty of the damage and the risk of res judicata against recovering later for damage as yet uncertain.

*Id.* The Court finds that, in this case, it would not be fair to charge Plaintiffs with foreseeing the extent of their damages, when an expanse of their lawn, including the area immediately surrounding their house, was still under water or ice. Compl. ¶ 51, at 12. As a result, the Court finds that Plaintiffs' claim is not barred by the statute of limitations.

### 2. Government Action

Even if the Court had found that the damage to Plaintiffs' property was otherwise foreseeable prior to July 1998, Defendant's motion to dismiss would fail because the government's attempts to repair the damage to Plaintiffs' land caused the date of accrual to be uncertain. *See Dickinson,* 331 U.S. at 748–49, 67 S.Ct. 1382 (finding that the trial court had jurisdiction where the plaintiffs could not be certain when the claim accrued). In *Applegate v. United States,* the Federal Circuit applied *Dickinson* to an erosion case in which the government promised to build a sand transfer plant to remedy the complaints of a group of landowners. 25 F.3d 1579, 1582 (Fed.Cir.1994). The court held that, "precisely because of the Government's promises to build a sand transfer plant, the landowners remain justifiably uncertain about the permanency of … the taking." *Id.* at 1583. The uncertainty as to when the claim accrued caused the court to reverse the trial court's decision that the statute of limitations barred the plaintiff's suit. *Id.* at 1584. In the case of *Banks v. United States,* an "even greater uncertainty was created" when the government made promises of mitigation and then actually performed mitigation efforts. 314 F.3d 1304, 1309 (Fed.Cir.2003). The Federal

Circuit in *Banks* also reversed the trial court's judgment that the statute of limitations had run. *Id.* at 1310.

Similarly, the government tried to mediate the situation in the case at bar. Although Defendant consistently denied liability and blamed other water sources for potentially causing Plaintiffs' flooding, it also tried persistently to mitigate the flooding. Pls.' Resp. at 3–4. For example, the government had an ecoregional geologist examine Plaintiffs' land in 1995. Pls.' Resp. Ex. 4. The geologist recommended, *inter alia,* constructing a surface drain, which was completed partially with money from the CCC Ponds Committee. Pls.' Resp. Exs. 4, 5. In fact, the final solution to Plaintiffs' flooding problems, the subsurface drain, was installed on BLM land and paid for with federal funds. Compl. ¶¶ 58–59, at 13–14.

Furthermore, Plaintiffs' actions were consistent with the purposes of the statute of limitations. Plaintiffs and Defendant acted in an exemplary manner: they tried to work through their problems before going to the courts for assistance. As Plaintiffs have said, "Had the federal government admitted that the reconstruction and recharge of the CCC Ponds caused the flooding on the Forsgrens' property at the outset, the Forsgrens would have promptly filed a claim for compensation with this Court and the statute of limitations issue would be completely avoided." Pls.' Resp. at 16. Most likely, if the government had not tried to help the Forsgrens at the beginning of the CCC Ponds Project, Plaintiffs also would have filed suit at an earlier date. Instead, Defendant tried to mitigate Plaintiffs' harm. As a result, it is easy to see how this appearance of cooperation from the government could have caused Plaintiffs to delay filing suit.

Finally, the Court notes that, if it followed Defendant's recommendation and ruled that Plaintiffs' claim accrued on an earlier date, the Court would be giving plaintiffs and defendants an incentive to act irrationally and engage in confrontational behavior. Instead, the Court seeks to encourage parties in situations like this to work together before seeking help from the courts. In addition, not penalizing Plaintiffs for trying to work with the government is consistent with *Dickinson's* mandate that the Fifth Amendment be enforced with an eye toward fairness. 331 U.S. at 749, 67 S.Ct. 1382.

### D. Equitable Relief

Defendant also argues that Plaintiffs' claims for equitable relief should be dismissed since this Court has no jurisdiction over equitable claims. Def.'s Mot. at 11; *see also Murray v. United States,* 817 F.2d 1580, 1582–83 (Fed.Cir.1987) ("The courts have consistently held ... that the Claims Court's jurisdiction is limited to such cases where the Constitution or a federal statute requires the payment of money damages as compensation for the violation."). Plaintiffs have agreed not to pursue these equitable claims. Pls.' Resp. at 21. Therefore, the Court dismisses said claims with prejudice.

### III. Conclusion

Since the Court is not persuaded by Defendant's arguments regarding the accrual date of Plaintiffs' claim against the government, the Court finds that Plaintiffs' action is not barred by the applicable six-year statute of limitations. However, as a result of this court's lack of jurisdiction over equitable claims, the Court finds that Plaintiffs' claims for equitable relief are barred from consideration.

Consequently, the Court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss the Complaint. The Clerk of the Court is hereby instructed to dismiss with prejudice Plaintiffs' equitable claims only. As there is no just reason for delay, the Clerk shall also enter judgment on Plaintiffs' equitable claims under Rule 54(b) of the Rules of the Court.

Defendant is hereby ORDERED to file an answer to Plaintiffs' complaint on or before **May 20, 2005.**