NEWMAN, Circuit Judge,
dissenting.
The panel majority holds that a Fifth Amendment taking occurs in a rails-to-trails case, and is actionable for compensation, on the date the government issues a Notice of Interim Trail Use or Abandonment (“NITU”). Such Notice announces the railroad’s right to abandon railway use and negotiate with a potential trail operator. If an agreement for interim trail use is reached, the right-of-way is rail-banked for possible future railway use. 16 U.S.C. § 1247(d). If such an agreement is not reached within 180 days, or an extension thereof, the right-of-way is deemed abandoned and any easements therefor are extinguished in accordance with the applicable state law. See Preseault v. Interstate Commerce Comm’n, 494 U.S. 1, 7 n. 5, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (“If agreement [for interim trail use with a qualified trail operator] is reached, interim trail use is thereby authorized. If not, the CITU or NITU automatically converts into an effective certificate or notice of abandonment.”). Thus, the statute and the NITU do not make trail use mandatory, and if trail use is not achieved, the statute effects abandonment of railway use and reversion of the right-of-way easement.
A Fifth Amendment taking cannot occur simply upon issuance of a NITU, because the deprivation of the reversion has not yet occurred, and may never occur. If railway use is simply abandoned, the easement is extinguished, the property is unburdened, and no taking occurs. Thus the issuance of a Notice of Interim Trail Use or Abandonment is not a per se taking, and no right of compensation arises on issuance of the Notice. My colleagues err in holding that the period of limitations for Fifth Amendment compensation starts to accrue, and that an action can be brought, *1379 immediately upon issuance of the NITU. As explained in Hair v. United States 350 F.3d 1253 (Fed.Cir.2003), a period of limitations does not accrue until an issue is actionable:
The basic rule is that the clock of a statute of limitations begins to run from the date the plaintiffs cause of action “accrues,” ... A cause of action “accrues” when the plaintiff has a complete and present cause of action. “The earliest opportunity for a complete and present cause of action is that moment when the plaintiff has suffered a legally recognizable harm at the hands of the defendant, such as the time of contract breach or the commission of a tortious wrong.”
Id. at 1260 (quoting 1 Calvin W. Corman, Limitation of Actions § 6.1 (1991)).
As discussed in Preseault v. United States, 100 F.3d 1525 (Fed.Cir.1996), the conversion of a railroad right-of-way to a recreational trail can constitute a Fifth Amendment taking. However, the cause of action and right to compensation do not vest until the claim accrues. In Boling v. United States, 220 F.3d 1365 (Fed.Cir.2000) this court reiterated that: “In general, a takings claim accrues when ‘all events which fix the government’s alleged liability have occurred and the plaintiff was or should have been aware of their existence.’ ” Id. at 1370 (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed.Cir.1988)). From my colleagues’ ruling that a taking occurred as soon as the possibility arose for trail conversion as an alternative to abandonment of the right-of-way, I must, respectfully, dissent.
The general rule in physical takings cases is that the taking is actionable when the property is taken and liability is fixed, not when it is suggested to be taken. In United States v. Clarke, 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980) the Court stated that “physical takings by governmental bodies that may entitle a landowner to sue for compensation,” 445 U.S. at 256, 100 S.Ct. 1127, occur with the occupation of the property: “Condemnation proceedings, depending on the applicable statute, require various affirmative action on the part of the condemning authority. To accomplish a taking by seizure, on the other hand, a condemning authority need only occupy the land in question.” 445 U.S. at 257, 100 S.Ct. 1127. In Nollan v. California Coastal Comm’n, 483 U.S. 825, 832, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) the Court made clear that it is the permanent occupation or permanent right of traversal that triggers the owner’s right to compensation, not the commencement of negotiations. See generally United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958) (the taking occurred when the property was occupied, not when the deed was transferred some time later). In Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) the Court focused on the permanent physical occupation of the property in determining whether a taking had occurred, not the legislative or administrative events that authorized that occupation.
The NITU is prospective, and requires additional steps by the rail carrier and others before either of the two options authorized by the NITU will take legal effect. See 49 C.F.R. § 1152.29. The NITU does not require that the railroad must consummate an agreement for rails-to-trails conversion. 49 C.F.R. §§ 1152.29(d), (e)(2); see National Wildlife Federation v. Interstate Commerce Comm’n, 850 F.2d 694, 700-02 (D.C.Cir. *1380 1988). As discussed in the context of whether the issuance of a NITU must be preceded by an environmental impact study, the tentative aspect of the NITU is stressed:
[Issuance of an NITU or CITU is not only incidental to the abandonment, but also is itself not a guarantee of eventual trail use. The NITU or CITU serves only “to provide an opportunity for the railroad and prospective trail users to negotiate an agreement; thus, when [the STB issues] a NITU or CITU there is only a possibility that a particular right-of-way actually will be used as a recreational trail.”
Goos v. Interstate Commerce Comm’n, 911 F.2d 1288, 1293 (8th Cir.1990) (emphasis in original).
When the government issued the NITU herein, it was not known whether the right-of-way would be converted to a recreational trail. If the ensuing negotiations had failed, such that the trail did not come into being, there could be no taking based on trail use. A suit for compensation is not ripe until the taking occurs. The panel majority states that “the termination of railroad use was still delayed by the NITU,” maj. op. at 1374, producing the incongruity whereby despite the delay in abandonment, the majority holds that the cause of action had already accrued. A “delay” of possible conversion to trail use, while it remains unknown whether trail use will occur at all, is not a per se taking with already vested entitlement to compensation. A taking claim does not accrue until “all events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an action.” Seldovia Native Ass’n v. United States, 144 F.3d 769, 774 (Fed.Cir.1998). The plaintiffs herein could not have sued for compensation while the trail use negotiations were ongoing; the period of limitations cannot accrue before suit could have been brought. Hair, 350 F.3d at 1260.
Indeed, the panel majority reinforces this view in its recognition that “So long as abandonment was not consummated, the STB retained jurisdiction over the right-of-way.” Maj. op. at 1376. Yet the “key date for accrual purposes is the date on which the plaintiffs land has been clearly and permanently taken.” Boling, 220 F.3d at 1370 (citing Seldovia). A taking claim cannot accrue any earlier than when the indispensable event required to establish the government’s liability has occurred. See Hash v. United States, 403 F.3d 1308, 1318. (Fed.Cir.2005) (“On the railway’s abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners’ property interests were taken for public use, in accordance with the principles set forth in the Preseault cases.”)
The panel majority errs in holding that the railroad’s “willingness to negotiate a trail use agreement,” maj. op. at 1377, is an actionable Fifth Amendment taking. Although my colleagues extol the virtues of a “bright line” for accrual of the period of limitations, citing Caldwell v. United States, 391 F.3d 1226 (Fed.Cir.2004), their choice of bright line would vest compensation rights although no taking may ever occur. The issuance of a Notice of Interim Trail Use is not a taking, whether or not railway use has already been abandoned, and independent of when trail use is successfully consummated. For a taking, “the alleged harm must be actual or imminent, not conjectural or hypothetical.” Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). *1381 As elaborated in Preseault, 100 F.3d at 1530 (“We find no support in Vermont law for the proposition, propounded by the defendants and accepted by the dissent, that the scope of an easement limited to railroad purposes should be read to include public recreational hiking and biking trails.”), liability for a taking is based on the change in use of the easement from railroad use to recreational trail. Until that change is fixed and its occurrence firm, there is no accrual of the right to recover compensation for such taking.
To the extent that Caldwell is construed to hold otherwise, as does the panel majority, Caldwell warrants review. We should sit en banc for this purpose, for the government advises that there are some twenty-two pending cases arising from the National Trails System Act. It is appropriate and necessary for this court to clarify the inconsistencies in our precedent.