# United States Court of Appeals for the Federal Circuit

---

**WYOMING TRUST CO., TRUSTEE OF DEAN W. HALL MINERAL TRUST DATED SEPTEMBER 25, 1981; DEAN W. HALL IRREVOCABLE TRUST DATED JULY 1, 1982; AND JOY LUCILLE HALL AND DEAN W. HALL TRUST DATED JULY 10, 1973, NANCY BUTCHER, TRUSTEE OF DEAN W. HALL MINERAL TRUST DATED SEPTEMBER 25, 1981 AND DEAN W. HALL IRREVOCABLE TRUST DATED JULY 1, 1982, KURT HALL, TRUSTEE OF DEAN W. HALL MINERAL TRUST DATED SEPTEMBER 25, 1981 AND DEAN W. HALL IRREVOCABLE TRUST DATED JULY 1, 1982, HALL ATLAS, LLC,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1544

---

Appeal from the United States Court of Federal Claims in No. 1:23-cv-01341-PSH, Judge Philip S. Hadji.

---

Decided:  March 6, 2026

---

REZA DIBADJ, Park & Dibadj, LLP, San Francisco, CA, argued for plaintiffs-appellants.    Also represented by DOUGLAS PARK, Menlo Park, CA.

BRIAN R. HERMAN, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by ADAM R.F. GUSTAFSON.

————————————

Before MOORE, *Chief Judge*, DYK and CUNNINGHAM, *Circuit Judges*.

MOORE, *Chief Judge*.

Wyoming Trust Co.; Nancy Butcher; Kurt Hall; and Hall Atlas, LLC (jointly, Appellants) appeal a United States Court of Federal Claims decision dismissing their takings claim relating to the right to mine certain coal deposits on property located in Wyoming.  For the following reasons, we affirm.

BACKGROUND

I.   Statutory Background

In 1977, Congress enacted the Surface Mining Control and Reclamation Act (SMCRA) "to provide for the cooperation between the Secretary of the Interior and the States with respect to the regulation of surface coal mining operations, and the acquisition and reclamation of abandoned mines, and for other purposes."  Surface Mining Control and Reclamation Act, Pub. L. No. 95-87, 91 Stat. 445, 445 (1977) (codified at 30 U.S.C. § 1201 *et seq.*).  In relevant part, SMCRA requires any applicant for a permit to operate a surface coal mining operation west of the 100th meridian west longitude to show the proposed operations would not cause certain negative impacts on "alluvial valley floors" (AVFs) or the water supplying AVFs.  30 U.S.C. § 1260(b)(5).  To remedy the loss of mining rights, SMCRA

instructs the Secretary of the Interior to "develop and carry out a coal exchange program" under which landowners can exchange "private fee coal precluded from being mined by [SMCRA]" for "Federal coal which is not so precluded." 30 U.S.C. § 1260(b)(5). Such exchanges are required to be made on "an equal value basis." 43 C.F.R. § 3436.2-3(e).

SMCRA also gives States the option to develop their own regulatory programs, which, if approved by the Secretary of the Interior, allows the State to assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations. 30 U.S.C. § 1253. Wyoming has exercised this regulatory authority since 1980 through the Wyoming Department of Environmental Quality (WDEQ). 30 C.F.R. § 950.10; *see also Whitney Benefits, Inc. v. United States*, 752 F.2d 1554, 1555 (Fed. Cir. 1985).

## II. Procedural Background

Appellants are trustees of various trusts holding rights to the Hall Ranch, a nearly 12,000-acre property in Wyoming containing over 138 million tons of coal.[1] J.A. 11. In 1985, WDEQ determined that 1,634 acres of the Hall Ranch were in an AVF. J.A. 12–13. For more than 25 years, neither Appellants nor Exxon Coal Resources (Exxon), which leased the Hall Ranch's coal rights in 1967, pursued a coal exchange in response to WDEQ's determination. J.A. 11–12. In 2010, however, Appellant Hall Atlas applied to the Bureau of Land Management (BLM) for a coal exchange. J.A. 12. BLM rejected WDEQ's 1985 AVF decision for years, but changed its position in 2014, after

---

[1] The facts summarized here are as alleged in Appellants' complaint before the Court of Federal Claims. J.A. 8–39. Because the court dismissed the case at the pleadings stage, the Government does not dispute Appellants' allegations for the purposes of this appeal. Gov't Br. 7 n.1.

which Hall Atlas proceeded with the exchange process and submitted a conceptual mine plan (CMP) to extract the Hall Ranch coal. J.A. 13–20. On October 4, 2016, BLM formally rejected Hall Atlas' CMP valuations and determined the Hall Ranch AVF coal had a value of $0 based on a valuation provided by the Department of Minerals Evaluations (DME), a division of the Office of Valuation Services (OVS). J.A. 20–21. On August 17, 2017, BLM issued a letter repeating the $0 valuation, rejecting a tract proposed by Appellants for an exchange based on the $0 valuation, and proposing three alternative tracts having a "$0.00 per net minerals acre valuation." J.A. 41–43 (letter); *see also* J.A. 29.

Hall Atlas did not find BLM's proposed tracts acceptable and brought a takings claim against the United States in the Court of Federal Claims on August 16, 2023—one day short of six years after the August 2017 BLM letter. J.A. 8–39. The United States moved to dismiss the complaint under Court of Federal Claims Rules 12(b)(1) and 12(b)(6). J.A. 2. The court granted the 12(b)(1) motion, dismissing for lack of subject matter jurisdiction, and denied the 12(b)(6) motion as moot. *Id.* Appellants appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review de novo the Court of Federal Claims' decision to dismiss a case for lack of subject matter jurisdiction. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff[s'] complaint and draw all reasonable inferences in favor of the plaintiff[s]." *Id.*

The Court of Federal Claims dismissed Appellants' complaint for lack of subject matter jurisdiction because it held Appellants' claim was time-barred for not being filed within six years after the claim accrued. J.A. 5–7; *see also* 28 U.S.C. § 2501 (establishing six-year jurisdictional time-

bar).  Appellants argue the court erred because their takings claim did not accrue until BLM issued its 2017 letter and was thus filed within the six-year limit.  The Government responds with several earlier dates on which Appellants' claim could have first accrued, all of which would result in Appellants' claim being time-barred.  We conclude any takings claim Appellants could have brought against the United States accrued at least by 2016 when BLM had both accepted WDEQ's AVF determination and determined that the Hall Ranch AVF coal had a value of $0.  To be clear, because we conclude that the 2016 BLM decision sufficed for claim accrual purposes, we need not reach the question of whether actions which occurred earlier were likewise sufficient to trigger the statute of limitations.  We also reject Appellants' remaining jurisdictional arguments as unpersuasive and accordingly affirm the Court of Federal Claims' dismissal of Appellants' complaint.

## I.    BLM's 2016 Letter

Appellants argue their takings claim did not accrue until August 17, 2017, when BLM communicated to Appellants its "'final decision' on the exchange value" of the Hall Ranch coal.  Appellants' Br. 19.  According to Appellants, it was not until this point that they could ascertain they would not receive just compensation for the taking of their mining rights.  *See* Appellants' Br. 12–19.  Appellants' complaint, however, tells a different story.

Appellants' complaint does not allege that the August 2017 BLM letter was a final decision on the Hall Ranch coal's exchange value.  Instead, the complaint alleges that it was BLM's *2016* letter in which "BLM formally rejected Hall-Atlas' CMP valuations" and communicated that "DME found . . . that the Hall Ranch AVF Coal has a value of $0."  J.A. 20.  As for the August 2017 letter, Appellants' complaint merely alleges it "*repeat[ed]* the fatal [valuation] flaw in the DME analysis," rejected a tract proposed by

Appellants for an exchange, and proposed three alternative tracts. J.A. 29 (emphasis added).

The 2017 letter itself shows the same. J.A. 41–42. The letter gives no indication that there was any reconsideration of DME's $0 valuation to "finalize" it. On the contrary, the letter noted that "*OVS* [which includes DME] is the final arbiter of the valuation necessary to assess an equal value exchange," and then referred to DME's previous $0 valuation in proposing certain tracts for an exchange. *Id.* (emphasis added). It defies reason to interpret BLM's 2017 letter as a final decision on the exchange value of the Hall Ranch coal when it explicitly states a *different* agency is the final arbiter of such valuations.

In their reply brief on appeal, Appellants argue the 2016 letter stated the "valuation and exchange needs to be reviewed, finalized, and approved by BLM." Reply Br. 13. But Appellants' complaint did not allege this, *see* J.A. 8–39, and Appellants provide no citation to support this statement, *see* Reply Br. 13. Nor did Appellants ever provide this court the 2016 letter throughout the course of this appeal. We cannot and will not save Appellants from pleading themselves out of court based on unsupported attorney argument in a reply brief on appeal.

Accepting as true all undisputed facts asserted in Appellants' complaint and drawing all reasonable inferences in Appellants' favor, we conclude the complaint, at best, suggests Appellants received a final valuation decision in 2016. Accordingly, even if Appellants' claim did not accrue until they were aware of the Government's valuation, their takings claim would still be time-barred when it was filed in 2023—more than six years later.

## II. Appellants' Remaining Subject Matter Jurisdiction Arguments

Appellants next argue that even if their claim first accrued before the issuance of BLM's 2017 letter, the Court

of Federal Claims still had jurisdiction because of (1) the self-executing nature of the Takings Clause and (2) the application of the equitable tolling, continuing claim, and stabilization doctrines due to the Government's conduct during the exchange process beginning in 2010. Appellants' Br. 27–33. We reject both arguments.

Regarding the self-executing nature of the Takings Clause, Appellants' complaint relied solely on the Tucker Act for jurisdiction without raising any freestanding Fifth Amendment claim. J.A. 9. And while the Tucker Act provides for jurisdiction over claims founded "upon the Constitution," 28 U.S.C. § 1491, those claims are necessarily subject to the Tucker Act's six-year statute of limitations. *See Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005). As we explained in *Hair v. United States*, 350 F.3d 1253, 1260 (Fed. Cir. 2003), "[a] constitutional claim can become time-barred just as any other claim can. Nothing in the Constitution requires otherwise." *Id.* (quoting *Block v. North Dakota*, 461 U.S. 273, 292 (1983)). We see no reason why the Tucker Act's six-year statute of limitations should not bar the Court of Federal Claims' jurisdiction over Appellants' takings claim.

The equitable tolling, continuing claim, and stabilization doctrines do not compel a different conclusion. Equitable tolling does not apply because 28 U.S.C. § 2501's time-bar is jurisdictional. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008) (The Supreme Court "has long interpreted the [C]ourt of [Federal] [C]laims limitations statute as setting forth . . . [a] more absolute[] kind of limitations period" that "forbid[s] a court to consider whether certain equitable considerations warrant extending a limitations period."). And the continuing claim and stabilization doctrines do not apply because Appellants' claim: (1) is not "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages," *Brown Park Ests.-Fairfield Dev. Co. v. United States*,

127 F.3d 1449, 1456 (Fed. Cir. 1997), and (2) does not involve a gradual process in which there was uncertainty whether a permanent taking had resulted, *Boling v. United States*, 220 F.3d 1365, 1371 (Fed. Cir. 2000). As explained above, the Government's 2016 determination that the Hall Ranch AVF coal had a value of $0, J.A. 20, was a singular event that left open no question as to the Government's view of the compensation it owed Appellants for the taking of its mining rights. The Court of Federal Claims did not err by declining to apply the equitable tolling, continuing claim, or stabilization doctrines because none applies to Appellants' claim.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Court of Federal Claims' dismissal.

## AFFIRMED

### COSTS

Costs to Appellee.