*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK GOTTLEBER and ROSE GOTTLEBER,

UNPUBLISHED
April 21, 2022

Plaintiffs-Appellants,

v

No. 354965
Bay Circuit Court
LC No. 12-003406-CZ

COUNTY OF SAGINAW,

Defendant-Appellee.

Before: BOONSTRA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

In this inverse condemnation case, plaintiffs appeal by leave granted[1] the trial court's order denying their motion to amend the complaint. We reverse and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case returns to this Court for a third time. We summarized the relevant facts underlying this litigation in our most recent decision:

> In 1994, plaintiffs purchased a 93-acre parcel of land next to the Saginaw River. Plaintiffs farmed the land until 2006, and then leased the land to a tenant who continued to farm the land from 2006 to 2009. It is undisputed that the land at issue would be a wetland if left in its natural state. Like other farmers in the area, to make the land farmable, plaintiffs pumped water from the land every April and May, and sometimes at other times depending on rainfall.

> The dispute in this matter stems from a project between the United States Army Corps of Engineers (USACE) and defendant. Evidence . . . indicates that— at the request of the state of Michigan, Bay County, and defendant—the USACE

---

[1] See *Gottleber v Saginaw Co*, unpublished order of the Court of Appeals, entered March 3, 2021 (Docket No. 354965).

and defendant entered a Project Cooperation Agreement that detailed a plan to construct and operate a Dredged Material Disposal Facility (DMDF). The purpose of the DMDF was to serve as a disposal site for materials dredged from the bottom of the Saginaw River, which requires periodic dredging in order to function as a commercial shipping waterway. The USACE would select land on which to place the DMDF and defendant was to acquire the land. The USACE would then construct, operate, and maintain the DMDF. The USACE selected two parcels of farmland that adjoined plaintiffs' property for the project, defendant purchased those parcels, and the DMDF was constructed. A pipeline now conveys materials dredged from the Saginaw River, including water and contaminated sediment, to the DMDF, and after the contaminated sediment settles into the DMDF, the remaining water is discharged back into the river.

. . . [T]he Michigan Department of Environmental Quality required the construction of a Wetland Mitigation Area (WMA) to mitigate the environmental impact of the DMDF. Defendant created the WMA by discontinuing pumping that had been performed by previous landowners of the area directly surrounding the DMDF. The WMA is next to the western border of plaintiffs' property, and is separated from plaintiffs' property by a railroad grade made out of soil. [*Gottleber v Saginaw Co (On Remand) (Gottleber II)*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2019 (Docket No. 336011), pp 1-2 (quotation marks and citations omitted).]

Plaintiffs filed an inverse condemnation action on June 5, 2012, alleging that, beginning in 2009, overflow water from the WMA had begun flooding plaintiffs' property several times per year. The complaint also included a section entitled "Reservation of Federal Claims," which stated:

Plaintiffs, Mark and Rose Gottleber, hereby give notice that they reserve all claims under the United States Constitution and the laws of the United States, including, but not limited to, claims under 42 U.S.C. § 1983.

In 2015, the trial court granted summary disposition to defendant with regard to all of plaintiffs' claims. We reversed the trial court in *Gottleber v Saginaw Co (Gottleber I)*, unpublished per curiam opinion of the Court of Appeals, issued June 12, 2018 (Docket No. 336011), p 6, concluding that defendant was a proper party and that defendant's alleged conduct constituted affirmative actions (as opposed to inaction or omissions) that would, if proved, be sufficient to demonstrate liability for inverse condemnation. Defendant applied for leave to appeal our decision in *Gottleber I*. In lieu of granting leave, our Supreme Court remanded the case to this Court for consideration of additional legal arguments made by defendant but not directly addressed by this Court. *Gottleber v Saginaw Co*, 503 Mich 1034 (2019). In *Gottleber II*, unpub op at 6, we again reversed the trial court's order, holding that while defendant could permissibly have stopped pumping and draining water to return the land to its natural state, it did not have the right to "artificially concentrate water and divert it to plaintiffs' land." We determined that summary disposition was not appropriate, based on the evidence that defendant's actions were not taken to return the land to its natural state, but rather that defendant actively took those actions in order to create the WMA. *Id*. at 6-7.

After these appeals concluded, the case returned to the trial court for further proceedings on plaintiffs' inverse condemnation claim. Soon after, plaintiffs sought leave to file an amended complaint. Plaintiffs' motion requested that the trial court allow plaintiffs to amend their complaint to raise a Fifth Amendment takings claim under 42 USC 1983 (the § 1983 claim).[2] The trial court denied the motion to amend, ruling that the § 1983 claim "accrued at the initial flooding" of plaintiffs' property and was barred by a three-year statute of limitations. In its order denying plaintiffs' motion to amend, the trial court cited futility, undue delay, and undue prejudice to defendant as justifications for its decision. Plaintiffs sought interlocutory review of the trial court's order, and we granted leave to appeal.[3]

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's denial of a motion to amend a complaint. *Dorman v Clinton Twp*, 269 Mich App 638, 654; 714 NW2d 350 (2006). A trial court abuses its discretion when the court's decision is "outside the range of reasonable and principled outcomes." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). "In the absence of disputed facts, whether a cause of action is barred by the applicable statute of limitations is a question of law, which this Court reviews de novo." *Magee v DaimlerChrysler Corp*, 472 Mich 108, 111; 693 NW2d 166 (2005).

## III. FUTILITY

Plaintiffs argue that the trial court erred by concluding that the proposed amendment of their complaint would be futile because a § 1983 claim would be barred by the statute of limitations. On the current record, we agree.

MCR 2.118(A)(2) provides that leave to amend "shall be freely given when justice so requires." Although a motion to amend should ordinarily be granted, *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997), a trial court may appropriately deny such a motion for "undue delay, bad faith or dilatory motive by the party seeking leave, repeated failures to cure deficiencies after previously allowed amendments, undue prejudice to the nonmoving party, and futility." *Kostadinovski v Harrington*, 321 Mich App 736, 743; 909 NW2d 907 (2017).

A proposed amendment to a pleading is futile "when, regardless of the substantive merits of the proposed amended pleading, the amendment is legally insufficient on its face." *Kostadinovski*, 321 Mich App at 743-744. Amending a complaint to add a claim that is barred by the statute of limitations is futile. See *Sanders v Perfecting Church*, 303 Mich App 1, 10; 840

---

[2] Section 1983 provides a federal cause of action against government officials who act under color of law to deprive someone of their federal constitutional rights. *Monell v Dep't of Social Servs of City of New York*, 436 US 658, 682; 98 S Ct 2018; 56 L Ed 2d 611 (1978).

[3] *Gottleber v Saginaw Co*, unpublished order of the Court of Appeals, entered March 3, 2021 (Docket No. 354965).

NW2d 401 (2013) (holding that amending a complaint to add a medical malpractice claim that was barred by the statute of limitations was futile).

A § 1983 claim is subject to a three-year statute of limitations.[4] "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v Kato*, 549 US 384, 388; 127 S Ct 1091; 166 L Ed 2d 973 (2007). Accrual occurs "when the plaintiff has a complete and present cause of action," meaning that the plaintiff "can file suit and obtain relief." *Id.* (quotation marks and citations omitted).

In this case, the trial court's determination that plaintiffs' § 1983 claim was barred by the applicable statute of limitations necessarily requires that the trial court have determined that their claim accrued before June 5, 2009, i.e., more than three years before plaintiffs filed their complaint. The trial court stated at the motion hearing:

> The claim accrued at the initial flooding, and so any amendment that I . . . would allow here would be too late, because it should've been filed within the three years from the date of the original flooding, so it's barred by the statute of limitations.

Defendant argued before the trial court that plaintiffs' proposed additional claim would be barred by the statute of limitations because plaintiffs stated in their complaint that the flooding first began in the spring of 2009. Citing plaintiff Mark Gottleber's (Mark) deposition testimony, defendant further stated that the flooding began in March 2009. A review of the record confirms that plaintiffs' complaint indeed alleged that "[b]eginning in 2009, the Gottleber Farm has flooded every spring, summer, and fall." However, from our review of Mark's deposition testimony, and particularly the pages cited by defendant, Mark never testified that the flooding began in March 2009. Rather, he testified that the entire property at issue is in a floodplain, and that, prior to defendant's construction of the WMA, the property routinely flooded from melting snow and generally required pumping in April or May each year. Further, the property usually did not require additional pumping throughout the remainder of the year, although an unusually heavy rainfall could require it. Mark also testified that he complained to defendant in August 2009 about floodwater on his property.

The allegations and the evidence presented to the trial court did not clearly establish that plaintiffs' § 1983 complaint accrued before June 5, 2009. By its very nature, the application of a statute of limitations requires temporal precision. However, the evidence before the trial court was simply too imprecise to support a conclusion as a matter of law that the flooding allegedly caused by defendants began before June 5, 2009. At best, it supports an inference that the flooding began in the spring of 2009. In that regard, we note that June 5, 2009 fell between the vernal equinox and summer solstice in 2009; therefore, in the northern hemisphere at least, it would not be

---

[4] The limitations period for § 1983 claims in Michigan is three years. See MCL 600.5805(2); *Owens v Okure*, 488 US 235, 250-251; 109 S Ct 573; 102 L Ed 2d 573 (1989). The parties do not dispute that the amendment to add a § 1983 claim would relate back to the date of the original complaint. See MCR 2.118(D). Because plaintiffs filed their original complaint on June 5, 2012, the accrual date for the § 1983 claim must be on or after June 5, 2009, in order for the claim not to be barred by the statute of limitations.

incorrect to describe that date as occurring during the spring. Again, under federal law, a cause of action generally accrues when a plaintiff has "a complete and present cause of action," meaning that it is possible to "file suit and obtain relief." *Wallace*, 549 US at 388. Because plaintiffs' property routinely flooded from snowmelt each year, and because there is an absence of temporal precision as to when the alleged flooding effects caused by defendant's conduct occurred or were evident, it far from clear from the existing record that plaintiffs' takings claim accrued before June 5, 2009. See *Boling v United States*, 220 F3d 1365, 1370-1371 (CA Fed, 2000) (noting that a takings claim has accrued when a plaintiff's property "has been clearly and permanently taken" and "the gradual process set into motion by the government has effected a permanent taking" of a plaintiff's property). The lack of clarity in the record, and the facts disputed by the parties, prevent us from concluding, as a matter of law, that plaintiffs' proposed amendment would have been futile. *Magee*, 472 Mich at 111. The trial court therefore abused its discretion by granting defendant's motion on the ground that plaintiffs' proposed amendment would be futile.[5]

We note that we do not hold that plaintiffs' § 1983 claim is definitely *not* barred by the statute of limitations, merely that the evidence before the trial court did not support a finding of futility with regard to plaintiffs' motion to amend. On remand, defendants may again raise the affirmative defense of statute of limitations in the usual course of proceedings, if appropriate.

We recognize that the issue of when plaintiffs' claim accrued may be more complex than it is with many claims. Plaintiffs' claim involves an alleged environmental taking, more specifically the intrusion of water on farmland that also floods annually through natural causes. As the United States Court of Appeals for the Federal Circuit has stated, "requiring plaintiffs to sue immediately upon the initial encroachment of their land" when only "mere inches" might have been affected is too rigid an application of accrual principles. *Boling*, 220 F3d at 1372; see also *United States v Dickinson*, 331 US 745, 748; 67 S Ct 1382; 91 L Ed 1789 (1947) (recognizing the difficulty property owners have when faced with "the onus of determining the decisive moment in the process . . . when the fact of taking could no longer be in controversy"). A case-by-case analysis is required, but the parties and the trial court should be guided by the principle that a plaintiff's claim has accrued when "the permanent nature of the taking was evident such that the land owner[s] should have known" that they had suffered damages. *Boling*, 220 F3d at 1373 (holding that the plaintiffs' taking claim for erosion damage caused by water accrued when "the erosion had substantially encroached the parcels at issue and the damages were reasonably foreseeable").

---

[5] Because we determine that the trial court erred by concluding that the initial flooding took place before June 5, 2009, we need not address plaintiffs' alternative argument that their claim did not "stabilize" until the property flooded in 2011. See *United States v Dickinson*, 331 US 745, 749; 67 S Ct 1382; 91 L Ed 1789 (1947). In any event, the federal cases that have relied upon the stabilization doctrine "represent an application of general accrual principles, rather than a broad exception to them." *Boling*, 220 F3d at 1371. The issue before us may be resolved by those same general accrual principles.

## IV.  UNDUE DELAY/PREJUDICE/BAD FAITH

Plaintiffs also argue that the trial court erred by denying their motion to amend on the basis of undue delay.  While we agree with the trial court that there was undue delay, we conclude that there was no evidence presented that the delay was in bad faith, or that defendant suffered actual prejudice as a result.  We therefore conclude that the trial court abused its discretion by granting defendant's motion on this ground.

Undue delay is a particularized reason that a court may offer to justify its decision to deny a motion to amend a pleading.  *Weymers*, 454 Mich at 658.  Delay alone does not justify denial of a motion to amend, but "a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result."  *Id*. at 659.

Plaintiffs' complaint was originally filed in 2012.  When asked to explain why they waited until 2020 to seek leave to amend the complaint to add the § 1983 claim, plaintiffs argued that the delay was caused by two factors: the procedural posture of the case, which included various appeals before this Court and the Michigan Supreme Court, and the state of federal inverse condemnation law prior to the United States Supreme Court's decision in *Knick v Scott Twp*, ___ US ___; 139 S Ct 2162; 204 L Ed 2d 558 (2019).  We find that these reasons do not sufficiently explain the delay.

In *Knick*, 139 S Ct at 2179, the Supreme Court held that "[a] property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation by a local government."  The *Knick* Court overruled its decision in *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City*, 473 US 172; 105 S Ct 3108; 87 L Ed 2d 126 (1985), which had held that a plaintiff lacked an actionable Fifth Amendment takings claim "until the property owner ha[d] tried and failed to obtain compensation through the available state procedure."  *Id*. at 2173.  Whereas *Williamson* "effectively established an exhaustion requirement for § 1983 takings claims," *id*. at 2173, *Knick* made clear that "pursuit of a [takings] remedy in federal court need not await any subsequent state action," *id*. at 2177.  The *Knick* Court recognized that *Williamson* effectively placed a takings plaintiff in a "Catch-22: He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court."  *Id*. at 2167.

Although *Williamson* may, at first glance, seem to support plaintiffs' argument regarding their delay in seeking to add a federal takings claim, this Court has stated in *Bruley v City of Birmingham*, 259 Mich App 619, 631; 675 NW2d 910 (2003):

> *Williamson*, therefore, stands for the proposition that a party cannot bring a federal Taking Clause claim in federal court until its state claims are resolved.  *However, Williamson does not serve to preclude a party from bringing its state and federal claims at the same time in a state court.*  [Emphasis added.]

In other words, plaintiffs were always permitted to raise their federal claim in the *state* court, and the *Knick* decision did not change that; rather, plaintiffs were not permitted, prior to *Knick*, to raise such a claim *in federal court* without having tried and failed to obtain compensation in state court.  We find plaintiffs' argument to the contrary to be unconvincing.

Further, with regard to the procedural posture of the case, plaintiffs were not required to await the resolution of the various appeals and remands concerning their other claims before seeking to amend their complaint to add a § 1983 claim. It appears from plaintiffs' arguments that they had originally intended to raise their § 1983 claim in a separate federal action, rather than ever raising it in state court. This strategy, under *Williamson*, required the exhaustion of state remedies before doing so; this explains plaintiffs' reservation of federal claims in their original complaint. When *Knick* was decided, plaintiffs apparently became concerned about the status of their reservation and possibly losing their § 1983 claim altogether, prompting them to seek to amend the original complaint in the state court. While the delay therefore might have made sense with regard to plaintiffs' overall litigation strategy, it was nonetheless not required by either the procedural posture of the state court case or federal inverse condemnation law. We therefore agree with the trial court that the delay in plaintiffs' request to amend their complaint was undue.

That does not end our inquiry, however. As stated, delay only warrants the denial of a motion to amend "if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Weymers*, 454 Mich at 659 (emphasis added). We find that neither bad faith by plaintiffs nor actual prejudice to defendant was demonstrated.

"Prejudice" in the context of a motion to amend exists if "the amendment would prevent the opposing party from receiving a fair trial." *Weymers*, 454 Mich at 659. "The mere fact that an amendment might cause a party to lose on the merits is not sufficient to establish prejudice." *Ostroth v Warren Regency, GP, LLC*, 263 Mich App 1, 5; 687 NW2d 309 (2004), aff'd on other grounds 474 Mich 36 (2006). Significant delay in seeking an amendment can be a source of prejudice. *Ben P Fyke & Sons, Inc v Gunter Co*, 390 Mich 649, 663; 213 NW2d 134 (1973). Additionally, "a trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial." *Weymers*, 454 Mich at 659-660.

The facts of this case do not demonstrate that defendant would be prejudiced by allowing plaintiffs' proposed amendment. Defendant argues that it would be prejudiced because the proposed amended complaint accompanying plaintiffs' motion included multiple state-law claims that had been fully dismissed and new federal claims unrelated to inverse condemnation. However, plaintiffs stated at the motion hearing that they would remove all non-inverse condemnation claims from their proposed amended complaint and amend the complaint solely to add the § 1983 claim. Defendant offers no other argument as to why it would be prejudiced by the addition of a § 1983 claim alleging an unconstitutional taking under the Fifth Amendment. The trial court similarly offered no reasoning for concluding that defendant would be prejudiced, beyond stating that the proposed amendment "would be disruptive to the process and could cause prejudice to the defendant."

Plaintiffs' proposed § 1983 claim is the federal counterpart to plaintiffs' inverse condemnation claim under state law. Therefore, the § 1983 claim should rely upon the same underlying facts that have already been the subject of extensive discovery and appeals: whether defendant, through its operation of the DMDF and WMA, caused the flooding of plaintiffs' property. Defendant should not need to conduct additional discovery to defend against the § 1983 claim, but there would remain an opportunity if it so chose to do so. At the time of the trial court's

order denying plaintiffs' motion to amend, discovery in the matter had been extended for at least another month. Therefore, plaintiffs' proposed amendment was not offered after the close of discovery or on the eve of trial. See *Weymers*, 454 Mich at 659-660. Moreover, plaintiffs' reservation of federal claims, specifically including § 1983 claims, gave defendant notice that plaintiffs could seek to pursue such a claim in the future. We conclude that the trial court abused its discretion by holding that defendant would suffer actual prejudice from the granting of the amendment. *Id*. at 659; *Dorman*, 269 Mich App at 654.

Additionally, defendant has not demonstrated that plaintiffs acted in bad faith. Defendant argues that plaintiffs demonstrated bad faith by attempting to include, in the proposed amended complaint, state-law claims that had been dismissed in prior proceedings. But as noted, plaintiffs agreed not to seek to add to those claims, and have confirmed on appeal that they "will remove from the proposed Amended Complaint any claim that was previously dismissed by the Circuit Court and that was not previously appealed."

Defendants also argue that plaintiffs' explanation of the delay based on *Williamson* demonstrates bad faith. We disagree. While we conclude that plaintiffs may have errantly interpreted *Williamson* as not permitting them to file their § 1983 claim in state court, we note that the Supreme Court in *Knick* recognized that, under *Williamson*, a plaintiff who filed such a claim risked losing the ability to pursue federal claims in federal court. *Knick*, 139 S Ct at 2167. On the whole, and considering the complex nature of the United States Supreme Court decisions and doctrines at issue, we do not find plaintiffs' conduct with regard to their § 1983 claim to demonstrate bad faith, even if errors of interpretation were made. The trial court did not make an explicit statement concerning plaintiffs' bad faith, but to the extent that it impliedly found that plaintiffs acted in bad faith, it abused its discretion by doing so. *Dorman*, 269 Mich App at 654.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Brock A. Swartzle